# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### June 4, 2013 Session

## BERT NEWBY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 06-03859-60      James Lammey, Judge**

**No. W2011-02522-CCA-R3-PC  - Filed December 9, 2013**

Petitioner, Bert Newby, appeals from the trial court's dismissal of Petitioner's post-conviction petition after an evidentiary hearing.  Petitioner asserts his trial counsel at the trial where Petitioner was convicted of first degree murder and aggravated assault rendered ineffective assistance of counsel.  After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JEFFREY S. BIVINS, JJ., joined.

Andrea D. Sipes, Jackson, Tennessee (on appeal); and Sais Phillips, Atlanta, Georgia (at trial),  for the appellant, Bert Newby.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kevin Rardin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

The facts leading to the underlying convictions were summarized in this court's opinion affirming the convictions.  Set forth therein, where Petitioner is referred to as "the defendant," is the following:

> This case involves the murder of the victim after he failed to repay a debt to the defendant for drugs.  The defendant denied that he killed the

victim but did acknowledge that the victim owed him $195. He also admitted that he hit the victim in the head with a 9mm pistol during an argument a few days before the victim was killed.

During the trial, the victim's wife testified that the victim came home one evening after picking up some food. The defendant was outside their home when the victim returned. The victim's wife testified that she advised the victim to stay away from the door, but he proceeded outside. She said that the defendant hit the victim in the head with a gun, inflicting an injury which required stitches. She testified that the defendant knocked on their door the next day and identified himself as "Thick." She testified that the defendant told her not to "say a damn word about what he was going to do." He told her that he had shot one man and could shoot another. The victim's wife said she went to bed, and, when the victim returned home, she advised him to lock the door. The defendant returned to the victim's home later that night and knocked on the door. The victim's wife testified that the victim answered the door and was shot by the defendant. She said that she saw the defendant running away from the apartment, getting into a car, and driving away.

The defendant acknowledged that he sold drugs to the victim and that the victim owed him money for drugs. The defendant also admitted to officers that he had been in a fight with the victim prior to the murder and that he struck the victim in the head with a 9mm pistol during the fight. The defendant told the police that he was in a motel with his girlfriend on the night of the murder. The girlfriend verified that they stayed at the motel that night, but she also told the police that the defendant left the motel twice that night.

*State v. Bert Newby*, No. W2007-01213-CCA-MR3-CD, 2009 WL 2151826, at *1 (Tenn. Crim. App. July 17, 2009), *perm. app. denied* (Tenn. Dec. 21, 2009).

## Post-Conviction Proceedings

On appeal, Petitioner asserts trial counsel rendered ineffective assistance of counsel in the following ways:

(1) Failed to respond to the State's "Motion for Notice of Alibi Defense," which caused his alibi witness, Chityka Taylor, to be prohibited from testifying at trial;

(2) Failed to present the testimony at trial of the following witnesses: Raymond Hughes and Andre Humphrey;

(3) Failed to properly impeach the testimony of the State's key eyewitness Jennifer Whittaker.

The following pertinent evidence related to the precise issues presented on appeal was adduced at the post-conviction evidentiary hearing. Petitioner testified that the trial court sustained the State's objection and prohibited his alibi witness, Chityka Taylor, from testifying at trial because his attorney had failed to properly give notice pursuant to Tennessee Rule of Criminal Procedure 12.1(a)(2)(A) to the State of Petitioner's intent to offer an alibi defense. The transcript of the trial, made an exhibit at the post-conviction hearing, fully corroborates this part of Petitioner's post-conviction testimony. Chityka Taylor testified during a jury out hearing that she and Petitioner were together in a hotel room away from the crime scene when the victim was killed. At the trial, trial counsel acknowledged that the State had filed a "Motion for Notice of Alibi Defense" prior to the case's "first setting" but had not filed another such notice prior to the "second setting" for the trial. Trial counsel did not challenge the State's assertion that written notice of the alibi defense had not been provided.

Petitioner further testified that his alibi witness, Ms. Taylor, was his children's mother. Petitioner and Ms. Taylor were living together at the time of the homicide. Petitioner had informed trial counsel prior to the trial about his alibi and the identity of the witness to establish the alibi. Petitioner stated that the first time he was aware there was a problem in presenting Ms. Taylor's testimony was when the trial judge ruled she could not testify at trial.

Petitioner further testified that Jennifer Whittaker, the victim's wife, had given multiple statements to the police regarding her husband's murder which occurred at the victim's home, with Ms. Whittaker also present. Petitioner testified that in the first statement, Ms. Whittaker told police that she did not "see the gun and she didn't see who had killed her husband." However, a few days later, Ms. Whittaker told police that Petitioner had killed the victim. Two written statements of Ms. Whittaker were admitted into evidence in the post-conviction hearings as exhibits during Petitioner's testimony.

The evidence at trial established that the victim was killed in the early morning hours of October 15, 2005. Chityka Taylor testified at the post-conviction hearing that she and Petitioner were living together in October 2005. She testified that Petitioner had an apartment but they were not living there because there was "too much chaos going on over there." Instead, they spent the nights at the Lamplighter Motel for two to three months. She

further testified that she and Petitioner went to the motel about 7:00 p.m. to 7:30 p.m. on October 14, 2005. She and Petitioner "checked out' of the motel at approximately 10:00 a.m. on the morning of October 15, 2005, several hours after the victim was killed. Ms. Taylor testified at the post-conviction hearing that Petitioner left the motel room only once between 7:30 p.m. on October 14, 2005 and 10:00 a.m. October 15, 2005. Between 11:30 p.m. and 12:30 a.m., Petitioner went to a store across the street from the motel and went to a hamburger restaurant next to the store and came right back to their motel room.

Larry Conley, who testified at trial that he saw someone other than Petitioner shoot the victim, testified at the post-conviction hearing that his two friends who were with him at the time of the homicide are named Brandon [Raymond] Hughes and Andre Humphrey. Mr. Conley further testified that he no longer sees these men "around" and did not know where they were located or could be found.

Blake Ballin, an attorney in Memphis, testified at the post-conviction hearing that he represented Petitioner through the preliminary hearing in General Sessions Court but did not represent Petitioner after the indictment was returned by the grand jury. During the course of his representation, Mr. Ballin interviewed several witnesses, including Raymond Hughes. Mr. Ballin recorded Mr. Hughes' statement and had it transcribed. Mr. Ballin testified that Mr. Hughes stated that "he saw the whole thing [the homicide]. [Mr. Hughes] knows [Petitioner] and it wasn't [Petitioner] and [Mr. Hughes] could describe the person who committed the crime but didn't know the name."

The transcript of Mr. Ballin's interview with Mr. Hughes was made an exhibit at the post-conviction hearing. According to Petitioner, Mr. Hughes' testimony would have shown that a man other than Petitioner, whose physical description was not at all similar to Petitioner, had committed the homicide. At one point in the statement, Mr. Hughes said that the man had plaid pants, a bald head, and reddish light skin. At another point he said the man was wearing a black dress.

The transcript of the statement of an unidentified witness was also made part of the exhibit at the post-conviction hearing during Mr. Ballin's testimony. He was apparently with or close to Mr. Hughes at the time of the incident. This unidentified witness said that the perpetrator was wearing a long black shirt over white pants. This witness also said the perpetrator was not Petitioner.

Trial counsel testified that she had been practicing law since 2000 and had been an attorney with the Shelby County Public Defender's office since that time. Trial counsel testified that Petitioner told her that he did not commit the homicide, so the theory of the defense was that Petitioner did not commit the crime. Regarding Petitioner's girlfriend

-4-

Chityka Taylor, trial counsel testified that Ms. Taylor's proposed alibi testimony was not credible because Ms. Taylor first said that Petitioner was inside the motel room all night and then later said Petitioner had left the motel once or twice during the night. Trial counsel acknowledged that the State filed a motion to be informed of alibi defense information, and in that motion stated that the crime occurred between 12:00 a.m. and 3:00 a.m. on October 15, 2005. Trial counsel admitted that she did not file a response to the State's request for information on an alibi defense.

Trial counsel acknowledged that she called Chityka Taylor to testify at the trial but Ms. Taylor was not allowed to testify because the trial court granted the State's objection to her being allowed to testify. The reason for excluding Ms. Taylor's testimony was that an alibi notice had not been filed by Petitioner.

However, trial counsel added that she had not planned to call Ms. Taylor to the witness stand prior to the trial. Trial counsel explained that the victim's widow, Jennifer Whittaker,

> testified and the only thing she said is ["]ma'am, all these questions you asking me, all I know is [Petitioner] did it.["] That was her answer to every single question that I asked was that [Petitioner] did it.

Trial counsel's testimony implied that due to Ms. Whittaker repeatedly saying "[Petitioner] did it," that she tried to elicit the testimony of Ms. Taylor as a last resort. Trial counsel admitted that she made sure Ms. Taylor was excluded from the courtroom during trial, but she only did this "just in case" it became necessary to call Ms. Taylor as a witness.

Trial counsel stated that there were three witnesses who were sitting on a porch near the scene when the crime occurred. She presented the testimony of one of these witnesses, Mr. Conley. Mr. Hughes came to the trial, but trial counsel did not call him to the stand because she felt he "had issues." Trial counsel summarized what Mr. Hughes had told her prior to trial as follows:

| [Petitioner's Counsel]: | Okay. So Mr. Hughes was one of those people. He saw someone that night walk up to the apartment and heard a gunshot while that person was standing at the doorway of the apartment? |
|---|---|
| [Trial Counsel]: | [Mr. Hughes] didn't say that they were standing at the doorway of the apartment. He |

didn't see where they went. He just said that somebody that wasn't from the neighborhood that had a different type of accent that didn't sound like they were from here walked, said something to him, walked in the direction of the apartments. Later on they heard some shots and then they saw somebody running way. So that's what, you know, they were testifying - - would have been testifying to.

At the post-conviction hearing, Petitioner's counsel did not ask trial counsel to specify what "issues" Mr. Hughes had which formed the basis of trial counsel's decision to not call Mr. Hughes to testify. Trial counsel testified that Mr. Humphrey did not appear at trial even though a subpoena had been issued for him. Trial counsel stated that she impeached the credibility of Jennifer Whittaker with a prior inconsistent statement given to police by Ms. Whittaker. Trial counsel added that Ms. Whittaker was a very difficult witness to cross-examine because Ms. Whittaker was mentally disabled and was also a crack cocaine addict. At trial, Ms. Whittaker answered almost all questions with "ma'am, all I know is [Petitioner] did it." We note that neither Mr. Hughes nor Mr. Humphrey testified at the post-conviction hearing.

David Zak, the assistant district attorney who prosecuted Petitioner at trial, testified that he remembered the victim's wife, Jennifer Whittaker. Mr. Zak testified that Ms. Whittaker "was functioning in a halfway house or rehab house second grade level." He was also aware of Ms. Whittaker's problems with drug abuse. Mr. Zak felt that Ms. Whittaker was a strong witness for the State even in light of her drug abuse problems. Mr. Zak speculated that Ms. Whittaker conveyed a strong image of honesty to the jury. She repeatedly maintained the same story during her trial testimony: that Petitioner had killed the victim.

Our review of the transcript of the trial corroborates the post-conviction hearing testimony of what occurred regarding Ms. Taylor not being allowed to testify as an alibi witness. Also, during the trial testimony of Detective Ernestine Davison, Petitioner's signed statement, given to Detective Davison three days after the homicide, includes the following, which was presented to the jury:

[Det. Davison]:      Where were you between the hours of 12:00 a.m. to 6:00 p.m. on Saturday, October 15, 2005?

| [Petitioner]: | I was at the Lamplighter Inn on Bellevue and Lamar. I left from the room and went to the store. It's a store across the street. It was about 12:24 a.m. At 11:00 p.m. I went and got some drugs from Chris at the apartments on Exchange. I was there about five minutes. |
|---|---|
| | I drove and stopped at the store, Hut's Brother's Pizza at Poplar and Manassas, it's a service station, something like a 7/Eleven this was about eleven something. I went back to the room. I had got a beer and cigar about eleven something and I went back across the street and got a cigar. I didn't leave back no more until 10:00 a.m. I woke up and - - [ ] I woke up and went to get forty dollars. |

Detective Davison also testified at trial that after Petitioner gave his statement Ms. Taylor was interviewed in order to verify Petitioner's statement regarding where he was at the time of the crime. Ms. Taylor confirmed in her interview that she was with Petitioner at the motel and that he left twice during the night.

As to Petitioner's second alleged example of ineffective assistance of counsel, that trial counsel failed to present the testimony of Raymond Hughes and Andre Humphrey, we note again that neither man testified at the post-conviction hearing. Larry Conley testified at the post-conviction hearing that Raymond Hughes and Andre Humphrey were with him at the time of the homicide, and that a person other than Petitioner committed the crime. However, Mr. Conley also testified that he did not know where Mr. Hughes and Mr. Humphrey currently resided, only "every once in a while" saw them, and acknowledged he no longer "hangs out" with them. Petitioner does not cite to any proof in the record as to any efforts made to locate Mr. Hughes and/or Mr. Humphrey to subpoena them for the post-conviction hearing. As noted above, Mr. Conley did testify at the trial.

We have also thoroughly reviewed the testimony at trial of Jennifer Whittaker, and specifically trial counsel's cross-examination of Ms. Whittaker. During cross-examination, trial counsel elicited the following testimony from Ms. Whittaker. The victim owed money to several drug dealers and had been threatened by them prior to his death. Also, two young men had threatened the victim because he was scheduled to testify against them in a vandalism case. Ms. Whittaker admitted that the victim was known for getting into trouble which would cause people to "be after" him. She also testified that the victim and Petitioner made up and that they did "become friends" after Petitioner hit the victim with a pistol on

-7-

October 5, 2005 and before the victim was killed on October 15, 2005. Ms. Whittaker admitted that she smoked crack cocaine during the hours before the victim was killed.

At trial, Ms. Whittaker denied telling police officers in her first statement that she did not know who shot the victim and that she did not see a gun. Trial counsel attempted to have Ms. Whittaker admit that she had only "assumed" that Petitioner had shot the victim because Petitioner had recently hit the victim in the head with a pistol. Ms. Whittaker emphatically denied this and testified, "I don't assume nothing [sic]. I know that it was [Petitioner]." Ms. Whittaker testified that she did not remember making a second statement to the police. She also contradicted earlier testimony during her cross-examination by denying that she had smoked crack cocaine a short time prior to the victim's death.

Trial counsel showed Ms. Whittaker a copy of the witness's first statement to police concerning the victim's death. Ms. Whittaker stated she could not read, but she did recognize her name and date of birth on the statement. She also remembered signing the statement and acknowledged her signature thereon. Ms. Whittaker testified that she did not recall telling the police officer in the first statement that she had not seen the shooter.

As mentioned above, trial counsel testified at the post-conviction hearing that Ms. Whittaker was a difficult witness to cross-examine because she was mentally challenged and a crack cocaine addict. This is corroborated by the transcript of Ms. Whittaker's testimony at the trial. The written statements given by Ms. Whittaker were not submitted as evidence at the trial, but the first statement, somewhat favorable to Petitioner, was presented to the witness and the information favorable to Petitioner therein was brought out on cross-examination of Ms. Whittaker. Both of Ms. Whittaker's statements were made exhibits at the post-conviction hearing. The second statement offers no content which would have been favorable to Petitioner if trial counsel had submitted the statement as an exhibit at trial. Also, we note that although one portion of Ms. Whittaker's first statement has her saying that she did not see the person who fired the shot at her husband, earlier in the statement she explicitly said that Petitioner was the person responsible for the death of the victim.

After hearing all the proof and arguments of counsel, the trial court made its ruling from the bench. The trial court reviewed and summarized the evidence presented at the hearing, and concluded that trial counsel had not rendered deficient performance, but that even if she had done so, Petitioner failed to prove prejudice. The trial court incorporated its ruling from the bench in a subsequently entered order denying the petition for post-conviction relief.

**ANALYSIS**

In order to be granted post-conviction relief, a petitioner must prove the factual allegations supporting relief by clear and convincing evidence at an evidentiary hearing. T.C.A. § 40-30-110(f); *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). The trial court's factual findings in its ruling in a post-conviction proceeding "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Appellate review of legal issues, or of mixed questions of fact and law, such as in a claim of ineffective assistance of counsel, is de novo with no presumption of correctness. *Pylant v. State*, 263 S.W.3d 854, 867-68 (Tenn. 2008). A petitioner must satisfy both prongs of the two-prong test to prove ineffective assistance of counsel which is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). These prongs are (1) deficient performance of counsel, defined as "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 687-88, and (2) prejudice to the defendant, defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dellinger*, 279 S.W.3d at 293. If the petitioner fails to establish either one of the prongs, that is a sufficient basis to deny relief, and the other prong does not need to be addressed. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). If a petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to do an act such as call a witness, present tangible documents for evidence, and/or file a motion to suppress, among other actions, the petitioner is generally obliged to present the witness or the other evidence at the post-conviction hearing in order to satisfy the *Strickland* prejudice prong. *See Pylant*, 263 S.W.3d at 869. In other words, it is incumbent upon a petitioner to prove that what he says trial counsel should have done would have had merit and produced admissible, relevant evidence.

*I. Failure to Respond to State's Motion for Notice of Alibi Defense*

Tennessee Rule of Criminal Procedure 12.1(a)(2) mandates that, if the State properly requests notice of an alibi defense, a defendant must serve notice of intent to use an alibi defense *in writing*, describing the place or places defendant claims to have been at the time of the offense and the name and address of each alibi witness. It is undisputed that trial counsel knew of Ms. Taylor's proposed testimony, and information of her address could have been obtained. Trial counsel's conclusion that Ms. Taylor's testimony was not really an alibi witness (Ms. Taylor admitted Petitioner left her presence a time or two for a brief time) did not justify failing to give notice of alibi evidence when there was, admittedly, a need to have Ms. Taylor available to testify "just in case." However, even if trial counsel's performance was deficient in this regard, Petitioner failed to provide by clear and convincing evidence that he was prejudiced by trial counsel's failure to give notice of alibi testimony. Even though

Ms. Taylor was prohibited from testifying at trial, her statement to police establishing the alibi was admitted as substantive evidence during Detective Davison's testimony. Also, Petitioner's statement to police, read at trial, also included his alibi proof. Under all the circumstances, Petitioner is not entitled to relief on this issue.

## II. Failure to Present the Testimony of Raymond Hughes and Andre Humphrey at Trial.

Neither witness was called to testify at the post-conviction hearing. An unsworn statement by Mr. Hughes, given to Petitioner's first attorney, was admitted into evidence at the post-conviction hearing. No explanation as to any efforts made by Petitioner to have these men attend and testify at the post-conviction hearing was provided. Mr. Conley's testimony that he himself did not know where they lived and had not seen them much was woefully inadequate to justify failure to present their testimony at the post-conviction hearing. *See Pylant*, 263 S.W.3d at 869. Petitioner is not entitled to relief on this issue.

## III. Failure to Properly Impeach the Testimony of Jennifer Whittaker

Petitioner argues in his brief that trial counsel was ineffective by failing to "introduce the prior inconsistence [sic] statements to impeach [Ms. Whittaker's] credibility with the jury." Petitioner argues that along with the two statements given by Ms. Whittaker to police, her preliminary hearing testimony was also an inconsistent statement. As noted above, we have carefully reviewed the cross-examination of Ms. Whittaker at trial. Trial counsel did an exemplary job under the circumstances. Despite the fact there were some inconsistencies in what she testified to at trial, in portions of both of the statements and the preliminary hearing, Ms. Whittaker consistently identified Petitioner as the person who shot the victim. Presenting the transcripts of the statements and the preliminary hearing to the jury would likely have further reinforced, in writing, evidence against Petitioner. Petitioner is not entitled to relief on this issue.

Having fully reviewed the record and the briefs, we affirm the judgment of the trial court dismissing the petition for post-conviction relief.

_____
THOMAS T. WOODALL, JUDGE

-10-